# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DONALD BRETT,

    Plaintiff,

v.

MEGAN J. BRENNAN, *in her official capacity as United States Postmaster General,*

    Defendant.

Case No. 1:15-cv-01613 (TNM)

## **MEMORANDUM OPINION**

Plaintiff Donald Brett, a former automotive mechanic for the United States Postal Service, has sued the United States Postmaster General, Megan Brennan, under the Rehabilitation Act of 1973 for employment discrimination on the basis of disability and for retaliation on the basis of protected activity. Ms. Brennan has moved for dismissal of the Amended Complaint or, alternatively, for partial summary judgment. Mr. Brett has moved for discovery. Because some of Mr. Brett's claims are unexhausted but most of his remaining claims are adequately pled, the Postmaster General's motion to dismiss will be granted in part and dismissed in part. Given the dismissal of Mr. Brett's unexhausted claims, Ms. Brennan's alternative motion for summary judgment as to these claims will be dismissed as moot. Mr. Brett's motion for discovery will be dismissed as moot to the extent that it responds to the Postmaster General's alternative motion for summary judgment, without prejudice to the filing of discovery motions related to Mr. Brett's remaining claims.

## **I. BACKGROUND**

According to the Amended Complaint, Mr. Brett began working for the United States Postal Service (USPS) in 1977 and did not exhibit performance deficits, take extended leave for

work-related injuries, or file workers' compensation claims until November 2008, when he ruptured his bicep in a workplace accident and was placed on medical disability by his doctor. Compl. ¶¶ 6, 8, 10.[1] Mr. Brett then initiated a workers' compensation claim by submitting forms to Al Trent, who became his second-line supervisor that same month. *Id.* at ¶¶ 9-10. When Mr. Brett returned to work on light-duty status on or about May 27, 2009, he learned that his worker's compensation claim had never been processed. *Id.* at ¶¶ 11-12. Although he thought he had been on worker's compensation leave due to his injury, he was informed that he had actually been placed on sick leave and that his time away from work had exhausted his sick leave. *Id.* at ¶ 12. Mr. Brett repeatedly sought workers' compensation leave, but Mr. Trent refused his requests. *Id.* at ¶ 13.

Mr. Brett needed to obtain leave because he was scheduled for surgical procedures for both of his legs in June and September 2009. *Id.* at ¶ 16. Mr. Brett attempted to buy back his sick leave, but was "impeded" by the fact that Monnie Preston, the benefits claims specialist whom he contacted, refused to take his calls and timely process his paperwork. *Id.* at ¶ 14-15. In order to communicate the urgency of his need for the paperwork to be processed, Mr. Brett provided medical documentation to Ms. Preston, to Mr. Trent, and to Kevin West, who was a supervisor-in-training, or 204B supervisor, under Mr. Trent's supervision and direction. *Id.* at ¶¶ 17-19. Mr. Brett also met with Mr. Trent and wrote a letter to Mr. Trent and Ms. Preston, copying a workers' compensation claims examiner, complaining that Mr. Trent and Ms. Preston

---

[1] Because this case is before me on a motion to dismiss, I accept the factual statements in Mr. Brett's Amended Complaint as true and draw all reasonable inferences in his favor for purposes of this opinion. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 671 (D.C. Cir. 2005).

were impeding his efforts by lying to him, mishandling his claim, and needlessly complicating the process. *Id.* at ¶¶ 20-21. Mr. Brett was unable to buy back his sick leave. *Id.* at ¶ 22.[2]

Mr. Brett was also unsuccessful in his attempts to have future sick leave advanced. On June 18 and June 24, 2009, Mr. Brett requested that his sick leave be advanced to allow him to undergo surgery. *Id.* His first surgery took place on June 30, 2009. *Id.* at ¶ 23. One week after the surgery, Mr. Trent denied Mr. Brett's request for advance sick leave. *Id.* at ¶ 24. Mr. Brett then submitted an additional request for advance sick leave due to complications that required a more extended recovery. *Id.* at ¶ 26. Mr. Trent denied this request as well. *Id.* at ¶ 27.

After he recovered from his first surgery and returned to work, Mr. Brett accidentally hit his head as he entered a postal truck. *Id.* at ¶ 28. Although he only suffered a superficial injury, he reported the accident and went to his doctor because he was on blood-thinners due to his recent surgery. *Id.* at ¶ 29. Mr. Trent and Jordan Hart, a 204B supervisor acting at Mr. Trent's direction, initiated a Pre-Disciplinary Investigation (PDI) into Mr. Brett's accident as an "unsafe work practice." *Id.* at ¶¶ 35, 43. The PDI led Mr. Trent and Mr. Hart to issue Mr. Brett a Notice of Proposed 14-Day Suspension on July 30, 2009. *Id.* at ¶ 40. Although this would have been the first disciplinary action against Mr. Brett in his entire career in the USPS, it was the most severe punishment possible short of termination.[3] *Id.* at ¶¶ 41-42. Mr. Hart told Mr. Brett he did not want to issue the suspension and that the decision had been Mr. Trent's. *Id.* at ¶ 61.

---

[2] Ms. Preston later prepared a memorandum stating that she had not received necessary documentation from Mr. Brett, but Mr. Brett alleges he has written confirmation that Ms. Preston received the documents she claims were not provided. *Id.* at ¶¶ 30-31.

[3] According to the Amended Complaint, Mr. Brett's managers attempted to justify this discipline during an administrative hearing by alleging for the first time that Mr. Brett had been in an "accident repeater program" at the time of the accident, although Mr. Brett had never heard of the program or been told that he was in it, had never been warned that he had excessive at-fault accidents, and was in fact a "safety captain" at the time of the accident. *Id.* at ¶ 37-39.

Mr. Brett grieved the proposed suspension with his union and, on August 11, 2009, initiated EEO counseling based not only on the proposed suspension but also on the mishandling of his workers' compensation claim, the obstruction of his efforts to buy back his sick leave, and the denial of his requests for advanced sick leave. *Id.* at ¶¶ 44, 46. Mr. Brett's managers were advised of his EEO complaint on November 9, 2009, and the EEO charge became formal on November 24, 2009. *Id.* at ¶¶ 48-49. Mr. Brett amended his EEO administrative complaint four times. *Id.* at ¶ 50.

In the months immediately after Mr. Brett's managers became aware of his EEO complaint, Mr. Brett continued to experience difficulties with his health and with his managers. On January 27, 2010, Mr. Brett developed severe flu symptoms and, because he was in negative leave status, submitted a request for advanced sick leave. *Id.* at ¶ 51-52. Mr. Trent denied the leave request and designated Mr. Brett's status as absent without leave, or AWOL. *Id.* at ¶ 54-55. On January 28, 2010, Mr. Brett brought a doctor's note to his then-204B supervisor, John Bowser, but Mr. Bowser did not inform him that he was on AWOL status. *Id.* at ¶ 56-57. On February 1, 2010, Mr. Brett returned to work and found that a PDI had been initiated into his AWOL status. *Id.* at ¶ 59. On February 5, 2010, Mr. Brett received a Notice of Proposed 14-Day Suspension from Mr. Trent and Mr. Bowser based on his having been AWOL and based on the prior suspension. *Id.* at ¶ 60. Mr. Bowser told Mr. Brett that he did not want to give him the suspension and that the decision had been Mr. Trent's. *Id.* at ¶ 61. Mr. Trent later denied Mr. Brett's request to re-designate the time that he was deemed AWOL so that it would be counted toward his annual leave. *Id.* at ¶ 75. On February 8, 2010, Mr. Trent initiated yet another PDI, this time because Mr. Brett used a snow-blower when Mr. Trent thought he was still on light-duty status because of his bicep injury. *Id.* at ¶ 65.

On February 19, 2010, Mr. Trent lodged a complaint against Mr. Brett with the Postal Inspection Service based on the fact that Mr. Brett had submitted a workers' compensation claim earlier that month after slipping on ice and breaking four ribs at work. *Id.* at ¶¶ 66-67, 69. Mr. Trent falsely alleged that this was Mr. Brett's tenth workers' compensation claim. *Id.* at ¶ 69. As a result, Mr. Brett became the target of a criminal investigation and was put under surveillance, apparently to determine whether he was in fact healthy and had submitted a fraudulent workers' compensation claim. *Id.* at ¶¶ 74, 78. The agency determined that Mr. Brett's activities, including "sitting at a Starbucks," were inconsistent with his compensation claim. *Id.* at ¶ 78. Because of the Postal Inspection Service's findings of purported misconduct, Mr. Brett was placed on off-duty status in May and June of 2010. *Id.* at ¶ 77. On or about June 15, 2010, Mr. Trent proposed that Mr. Brett be terminated based on the criminal investigation, and the USPS sustained his proposal on September 3, 2010 based on the criminal investigation, Mr. Brett's prior AWOL status, and Mr. Brett's two suspensions. *Id.* at ¶¶ 78, 90. Believing that he had no effective recourse, Mr. Brett submitted his resignation preemptively. *Id.* at ¶ 81.

Mr. Brett alleges that similarly situated employees without disabilities and without EEO complaints were not disciplined, or at least not disciplined like he was, for "similar occurrences, job-related accidents and leave requests." *Id.* at ¶ 63. He also alleges that Mr. Trent has a "record of lodging false and vengeful complaints with the office of the Postal Inspector to enact revenge and punish employees for opposing his employment practices." *Id.* at ¶ 82. At the time that Mr. Trent denied Mr. Brett's final sick leave request and designated Mr. Brett as being AWOL, Mr. Trent was also working on an affidavit in response to Mr. Brett's EEO complaint. *Id.* at ¶ 58. Mr. Trent submitted a supplemental affidavit to the EEO investigator nine days after denying Mr. Brett's request to count the time that he was designated AWOL against his annual

5

leave. *Id.* at ¶¶ 75-76. One day after Mr. Trent submitted the supplemental affidavit, Mr. Brett agreed to have his EEO complaint submitted for Alternative Dispute Resolution, but Mr. Trent refused to schedule a settlement conference. *Id.* at ¶ 72.

Mr. Brett's administrative complaints were ultimately dismissed, and the EEOC issued a Final Agency Decision affirming the dismissal on July 2, 2015. *Id.* at ¶ 84. On October 2, 2015, Mr. Brett brought this action in federal court against his employer, the Postmaster General. His initial Complaint alleged discrimination and retaliation based on disability, age, and race under Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act. Judge Ketanji Brown Jackson determined that it was "nearly impossible to render a determination on the merits" because of the lack of clarity regarding the claims at issue and the legal standards governing the Postmaster General's response to the Complaint. Op. at 3. Accordingly, the Court directed Mr. Brett to file an Amended Complaint, which Mr. Brett did on March 13, 2017. As stated above, the Postmaster General has moved for dismissal of the Amended Complaint or, alternatively, for partial summary judgment, and Mr. Brett has moved for discovery. These motions are now before me.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and therefore "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Accordingly, jurisdiction is a prerequisite that must be satisfied before proceeding to the merits, and a federal court must dismiss any action over which it determines that it lacks jurisdiction. *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007); *see also* Fed. R. Civ. P. 12(h)(3). On a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.

*Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984). A plaintiff may rely on facts outside the pleadings to satisfy this burden, as "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

In addition to challenging jurisdiction, a defendant may move to dismiss a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand such a motion, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The Court must limit its consideration to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Considering other facts would convert the motion to dismiss into a motion for summary judgment, which may only be done if the Court provides the parties "notice and an opportunity to present evidence in support of their respective positions." *Id.* (quoting *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011)).

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986);

7

*Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this showing has been made, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III. ANALYSIS

"The Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals" and requires them to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). A person is a disabled individual for purposes of the Rehabilitation Act if he: (1) has "a physical or mental impairment that substantially limits one or more major life activities;" (2) has "a record of such an impairment;" or (3) "is regarded as having such an impairment." *Id.* A disabled individual is an otherwise qualified individual if he is "able to perform the essential functions of [his] job with or without reasonable accommodation." *Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015). The Rehabilitation Act also prohibits federal agencies from retaliating against individuals for engaging in activity protected by the Act. *Id.* at 1099.

The Postmaster General appears to concede that Mr. Brett has adequately alleged that he was "an otherwise qualified individual with a disability" by alleging that he suffered a bicep

8

injury that was accommodated by an assignment to work on light-duty status. *See* Memo. ISO Mot. Dismiss, 1. Rather than contesting the applicability of the Rehabilitation Act to Mr. Brett, the Postmaster General's Motion to Dismiss disputes whether Mr. Brett has properly exhausted and adequately pled his hostile work environment, discrimination, and retaliation claims.

### A. Mr. Brett Has Not Exhausted His Claim That Mr. Trent Lodged Baseless Allegations Against Him with the Postal Inspection Service

Under the Rehabilitation Act, exhaustion of administrative remedies is a jurisdictional prerequisite because "[t]he Act limits judicial review to employees aggrieved by the final disposition of their administrative complaint." *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006). Accordingly, I lack jurisdiction to consider any claims by Mr. Brett that he did not raise in his administrative complaint. The Postmaster General argues that Mr. Brett failed to raise at the administrative level his claims that Mr. Trent lodged false allegations against him with the Postal Inspection Service and that Mr. Trent's denial of his requests for advance sick leave constituted denials of reasonable accommodation requests. Memo. ISO Mot. Dismiss, 11.

Because exhaustion is jurisdictional, Mr. Brett bears the burden of showing that he raised these allegations at the administrative level. *Georgiades*, 729 F.2d at 833 n.4. Mr. Brett's opposition does not satisfy this burden. With respect to his claim that Mr. Trent lodged false allegations against him, Mr. Brett's opposition argues that he had a right to raise this claim in administrative proceedings and that he attempted to raise a related claim about being suspended as a result of Mr. Trent's allegations. Opp. to Mot. Dismiss, 29-30. In support of this claim, Mr. Brett cites a letter that he sent to the EEO Contact Center stating that he had made phone calls attempting to complain that he was suspended based on the unsupported allegation that he might be injurious to himself or others. *Id.* Ex. 30. This does not show that Mr. Brett raised a claim at the administrative level about the complaint Mr. Trent allegedly made about Mr. Brett's

workers' compensation claims.[4] Accordingly, Mr. Brett has failed to demonstrate that he exhausted this claim and has not satisfied his burden of establishing jurisdiction.

Nor has Mr. Brett satisfied his burden of demonstrating that he exhausted his claim that the denial of advance sick leave constituted denial of reasonable accommodation requests. Mr. Brett offers only a citation to his EEO complaint, a citation to an EEO Dispute Resolution Specialist's Inquiry Report, and the conclusory statement, "It cannot be convincingly contested that Mr. Brett lodged complaints under the Rehabilitation Act relating to the denial of leave that put defendant on notice that he was asserting both a disparate treatment and failure to accommodate claim." *Id.* at 5, 30-31. Mr. Brett's EEO complaint describes itself as a discrimination complaint and makes no reference to reasonable accommodations. *Id.* at Ex. 7 ("My discrimination complaint is based on the following facts . . ."). The Inquiry Report states that Mr. Brett alleged discrimination and not that he alleged failure to accommodate. Mot. Dismiss Ex. A. Since disparate treatment and failure to accommodate are distinct claims under the Rehabilitation Act and Mr. Brett has only demonstrated that he raised disparate treatment claims, his failure to accommodate claims are unexhausted. Accordingly, they must be dismissed.[5]

---

[4] In addition to citing this letter, Mr. Brett's statement of facts in dispute also cites Exhibit 15 to show that he raised a claim at the administrative level concerning the allegations Mr. Trent made against him to the Postal Inspection Service. *Id.* at 4-5. Exhibit 15 contains correspondence sent to Mr. Brett by his employer and suggests that there may have been some connection between Mr. Trent's allegations and Mr. Brett's suspension. *Id.* Ex. 15. However, even considered in light of Mr. Brett's letter to the EEO Contact Center, this correspondence does not show that Mr. Brett raised a claim about Mr. Trent's allegations to the Postal Inspection Service.

[5] The Postmaster General has moved, in the alternative, for summary judgment on Mr. Brett's unexhausted claims. Mot. Dismiss, 1; Memo. ISO Mot. Dismiss, 11. However, summary judgment is unnecessary in light of the dismissal of these claims. She also argues that I should dismiss as unexhausted "any claim based on a discrete act that occurred prior to June 27, 2010 and any claim based on a discrete act that occurred after February 5, 2010.". Memo. ISO Mot.

### B. Mr. Brett Has Adequately Pled a Hostile Work Environment

To state a hostile work environment claim, a plaintiff must allege that his employer subjected him to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The Postmaster General argues that Mr. Brett has failed to state a hostile work environment claim under the Rehabilitation Act because his Amended Complaint only supports the claim with conclusory assertions, "does not allege that any comments or actions directed at Brett expressly focused on his bicep injury," and is "devoid of any indication that Mr. Brett's 'torn right bicep' was the reason why the [Defendant] decided to act." Memo. ISO Mot. Dismiss, 13.[6]

However, Mr. Brett has alleged that a sustained series of surprisingly negative actions was taken against him despite the fact that similar actions were not taken against employees who were similarly situated except for the fact that they did not have disabilities and did not file EEO complaints. Compl. ¶ 63. He has also alleged that Mr. Trent has a record of retaliation against employees who oppose his employment practices and that Mr. Trent took several of the actions

---

Dismiss, 11. However, it is not necessary for me to decide this question. As Mr. Brett notes, he has not asserted any claims for discrete acts that occurred prior to June 27, 2009. Opp. to Mot. Dismiss, 29 n.4. Moreover, the only claim he has asserted for a discrete act that occurred after February 5, 2010 is the claim based on the allegations that Mr. Trent made to the Postal Inspection Service against Mr. Brett, *see* Compl. ¶¶ 86, 90, and I have already explained that this claim must be dismissed as unexhausted.

[6] The Postmaster General's reply brief attempts to raise additional arguments about whether there was a causal connection between Mr. Brett's EEO complaint and the conduct of which he complains and about whether the conduct of which Mr. Brett complains was sufficiently severe and pervasive to give rise to a hostile work environment claim, *see* Reply ISO Mot. Dismiss at 8-9, but I do not consider them. *See American Wildlands v. Kempthorne*, 530 F.3d 991, 88 (D.C. Cir. 2008) (declining to consider argument raised for the first time in a reply brief on grounds of forfeiture).

11

in question at times when he was actively working on his response to Mr. Brett's EEO complaint. *See, e.g.,* Compl. ¶¶ 58, 75-76, 82. Thus the Amended Complaint is not devoid of indications that the USPS's actions were prompted by Mr. Brett's disability or his participation in protected activity. I find these allegations sufficient at this stage in the proceedings and do not believe dismissal to be appropriate.[7]

### C. Mr. Brett Has Adequately Pled Several Discrimination Claims

The essential elements of a discrimination claim under the Rehabilitation Act are: (1) the plaintiff suffered an adverse employment action; and (2) the adverse employment action was taken on account of the plaintiff's protected status. *Baloch*, 550 F.3d at 1196. In the context of a discrimination claim, an adverse employment action must be a "tangible employment action"— one that constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Lurensky*, 167 F. Supp. 3d at 15 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The standard of causation for Rehabilitation Act claims is but-for cause, meaning that the adverse employment action would not have taken place if it were not for the plaintiff's protected status. *Gard v. Dep't of Educ.*, 752 F. Supp. 2d 30, 36 (D.C. Cir. 2010).

Mr. Brett's exhausted discrimination claims are based on the denial of his requests for advance sick leave in July 2009 and in January 2010, on the unwarranted 14-day suspensions imposed on him in July 2009 and in February 2010, and on the citation he received for being

---

[7] The Postmaster General also argues that Mr. Brett's hostile work environment claim may be unexhausted to the extent that it could rely entirely on conduct that took place prior to June 27, 2009. Memo. ISO Mot. Dismiss, 13; Reply ISO Mot. Dismiss, 8. However, I find that Mr. Brett has alleged conduct that took place after June 27, 2009 that could form part of the basis for his hostile work environment claim.

AWOL in 2010. *See* Compl. ¶ 86. According to the Postmaster General, the denial of Mr. Brett's requests for advance sick leave did not effectuate "a significant change in employment status" because Mr. Brett did not ask for a significant period of leave or suffer financial harm, and the suspensions were not adverse employment actions because Mr. Brett retired without ever serving them. Memo. ISO Mot. Dismiss, 15 (citing *Baloch*, 550 F.3d at 1199; *Lurensky*, 167 F. Supp. 3d at 15, 167 F. Supp. 3d at 15; *Bowe-Connor v. Shinseki*, 923 F. Supp. 2d 1, 8 (D.D.C. 2013)).[8] However, Mr. Brett has alleged that his suspensions were used as grounds for approving his termination and that the January 2010 denial of his sick-leave request formed the basis for one of his suspensions.[9] *See* Compl. ¶¶ 59-60, 80. Construing the allegations in the light most favorable to Mr. Brett, as I must, I find that Mr. Brett has adequately alleged that these actions effectuated a significant change in Mr. Brett's employment status and constitute adverse employment actions.[10]

Mr. Brett has also adequately alleged that the conduct of which he complains was causally connected to his disability. The Postmaster General argues that Mr. Brett's disability has no connection to the denial of his sick-leave requests because the requests were not prompted by his bicep injury and because the injury has no connection to the suspensions or to the AWOL

---

[8] Ms. Brennan does not address whether Mr. Brett's citation for being AWOL constitutes an adverse employment action for purposes of discrimination. *See* Opp. to Mot. Dismiss, 15-16. Although this might not be an adverse employment action in and of itself without a showing of significant collateral consequences, Mr. Brett has alleged that his designation as AWOL was used to justify agency approval for his termination. Compl. ¶ 80.

[9] Mr. Brett's opposition appears to offer the additional claim that he would have had to serve his suspensions if his employment had not come to an end and that his suspensions would have been unpaid, but this allegation is not contained in his Amended Complaint. Opp. to Mot. Dismiss, 34.

[10] Mr. Brett does not meaningfully dispute that the July 2009 denials of sick leave did not rise to the level of adverse employment actions. *See* Opp. to Mot. Dismiss, 34.

13

designation, as these were prompted by Mr. Brett hitting his head and having flu symptoms. Memo. ISO Mot. Dismiss, 15. However, the reasons Mr. Brett asked for sick leave do not have any necessary correlation with the reasons sick leave was denied, and the Ms. Brennan has not shown that accidentally hitting one's head or catching the flu are generally sufficient reasons for suspensions and AWOL designations. To the contrary, Mr. Brett has alleged that the treatment he received was inconsistent with the treatment of other employees who were similarly situated but not disabled. Compl. ¶ 63. Although it would be premature to determine that Mr. Brett's disability was a but-for cause of the acts that he complains led to his termination, I am required at this stage in the proceedings to make every reasonable inference in his favor. *Covad*, 398 F.3d at 671. Thus, I find that Mr. Brett has adequately alleged that he suffered several adverse employment actions because of his disability. More specifically, Mr. Brett has adequately pled his discrimination claims with respect to his two suspensions, his AWOL designation, and the January 2010 denial of his request for sick leave. With respect to these claims, the Postmaster General's motion to dismiss will be denied.[11]

### D. Mr. Brett Has Adequately Pled Several Retaliation Claims

The elements of a retaliation claim under the Rehabilitation Act are: (1) the plaintiff engaged in activity protected by the Act; (2) the plaintiff suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Bowe-Connor*, 923 F. Supp. 2d at 7-8 (citing *Burlington*, 548 U.S. at 67-69). In the context of a retaliation claim, an adverse employment action is one that is sufficiently harmful that it "could well dissuade a reasonable worker from making or supporting

---

[11] As stated above, Mr. Brett has not adequately alleged an adverse employment action with respect to the July 2009 denial of his sick-leave requests, and the Postmaster General's motion to dismiss this claim will be granted.

14

a charge of discrimination." *Lurensky*, 167 F. Supp. 3d at 16 (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Although this definition is broader than in the context of discrimination claims, it remains necessary to "separate significant from trivial harms" and to identify "*material* adversity" in order to support a claim. *Id.* (quoting *Burlington*, 548 U.S. at 68).

As to the first element, the earliest protected activity that Mr. Brett has alleged is his initiation of EEO counseling on August 11, 2009. *See* Compl. ¶ 46. Thus, the Postmaster General is correct in arguing that Mr. Brett has failed to state a claim of retaliation on which relief can be granted with respect to any conduct prior to this date. Accordingly, Mr. Brett's retaliation claims related to the July 2009 denial of his sick-leave requests and to the July 2009 suspension will be dismissed.

Mr. Brett's remaining retaliation claims are based on the January 2010 denial of his sick-leave request, the February 2010 suspension, and his designation as AWOL. *See* Compl. ¶ 90. In light of the fact that adverse employment action is more broadly defined in the retaliation context than in the discrimination context, my earlier determination that these actions constitute adverse employment actions is controlling as to the second element. Turning then to the third element of Mr. Brett's claim, I find that Mr. Brett has adequately pled a causal connection between these actions and his protected activity by alleging that other similarly situated employees who had not initiated EEO complaints were not subjected to similarly adverse actions, that Mr. Trent became aware of his EEO complaint less than three months before engaging in the conduct of which Mr. Brett complains, and that Mr. Trent was actively working on an affidavit in response to his EEO complaint contemporaneously with the conduct of which

Mr. Brett complains.[12] Compl. ¶¶ 48, 58, 63. Accordingly, Mr. Brett has adequately pled retaliation claims based on the January 2010 denial of sick leave, the February 2010 suspension, and the AWOL designation. The Postmaster General's motion to dismiss these claims will be denied.

## IV. CONCLUSION

For the reasons explained above, the Postmaster General's motion to dismiss will be granted in part with respect to Mr. Brett's unexhausted claims, Mr. Brett's claims arising from the July 2009 denial of his sick-leave requests, and Mr. Brett's retaliation claims arising prior to the filing of his EEO complaint, but will be denied in part with respect to Mr. Brett's remaining claims. The Postmaster General's alternative motion for partial summary judgment on Mr. Brett's unexhausted claims will be dismissed as moot in light of the dismissal of these claims. Mr. Brett's motion for discovery will be dismissed as moot to the extent that it responds to the Postmaster General's alternative motion for partial summary judgment, without prejudice to the filing of discovery motions related to Mr. Brett's remaining claims. A separate order will issue.

Dated: March 19, 2018

TREVOR N. MCFADDEN
United States District Judge

---

[12] The date on which Mr. Trent became aware of the EEO complaint and the time period during which he was actively preparing his response to it are probative circumstantial evidence, notwithstanding the Postmaster General's argument that I should focus on the connection between Mr. Brett's protected activity and the adverse employment action. *See* Reply ISO Mot. Dismiss, 13.

16