# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **DONALD BRETT**, <br><br> Plaintiff, <br><br> v. <br><br> **MEGAN J. BRENNAN**, *in her official capacity as United States Postmaster General*, <br><br> Defendant. | Case No. 1:15-cv-01613 (TNM) |

## MEMORANDUM OPINION

Plaintiff Donald Brett, a former employee of the U.S. Postal Service, has sued the Postmaster General under the Rehabilitation Act of 1973 for employment discrimination based on disability, for retaliation based on protected activity, and for the creation of a hostile work environment. The Postmaster General has moved for summary judgment. For the following reasons, the Court will grant in part and deny in part that motion.

## I. BACKGROUND

As the Court must at this stage, it sets out the facts and inferences in the light most favorable to the Plaintiff. *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

Mr. Brett joined the U.S. Postal Service in 1977. Pl.'s Statement of Material Facts ("Pl.'s Statement") at 1, ECF No. 56-1.[1] In 2008, he ruptured his right bicep in a workplace accident. *Id.* at 2. He filed for workers' compensation and did not work for about five and a half months. *Id.* at 2. He claims that, because of this injury, he is disabled under the Rehabilitation Act. *Id.* at 7.

---

[1] All page citations are to the page numbers generated by the Court's CM/ECF system.

After he returned to work, Mr. Brett accidentally hit his head entering a postal truck. *Id.* at 8. His supervisors started a Pre-Disciplinary Investigation ("PDI") about that accident. *Id.* at 3. During the PDI, Mr. Brett would not explain what caused the accident. *Id.* After that, his supervisors issued him a Notice of Proposed 14-Day Suspension. *Id.* at 4.

In August 2008, Mr. Brett contacted an Equal Employment Opportunity ("EEO") counselor alleging discrimination. *See* Pl.'s Ex. A, ECF No. 56-3 at 114–15. A couple of months later, he requested Advanced Sick Leave for an upcoming surgery, and Al Trent, his second-line supervisor, accidentally approved it.[2] Pl.'s Statement at 4; Def.'s Ex. 18, ECF No. 53-21. In January, Mr. Brett again requested Advanced Sick Leave, claiming "cold" and "sick throat," but this time, John Bowser, his then-supervisor, denied it. *Id.*; *see also* Def.'s Ex. 14, ECF No. 53-17.[3] The next day, Mr. Brett re-submitted this request, this time attaching a doctor's note describing his upper respiratory infection. Pl.'s Statement at 4; *see also* Def.'s Ex. 14; Def.'s Ex. 19, ECF No. 53-22. This request was also denied. *See* Def.'s Ex. 14. Mr. Brett stayed home anyway. Pl.'s Statement at 6.

When Mr. Brett returned to work, he learned he had been noted as absent without leave ("AWOL"). *See id.* at 6–7. Mr. Bowser conducted another PDI based on Mr. Brett's AWOL status. *Id.* Again, during the meeting, Mr. Brett answered no questions. *Id.* at 7. And again, his

---

[2] In the fact section of his brief, Mr. Brett mentions that Mr. Trent was implicated in a criminal case. *See, e.g.*, Mem. in Opp. ("Pl.'s Br."), ECF No. 56 at 13. But Mr. Brett makes no legal argument based on this allegation. *See generally* Pl.'s Br.

[3] In the fact section of his brief, Mr. Brett also alleges that Mr. Trent wrote on Mr. Brett's form: "no sl due to management EEO on OWCP case." Pl.'s Br. at 10. The Postmaster General insists that Mr. Brett himself wrote that remark. Def.'s Reply, ECF No. 58-1 at 13. Perhaps this was a typo in Mr. Brett's brief, given that he makes no argument based on this factual allegation.

supervisors issued him a Notice of Proposed 14-Day Suspension. *Id.* He retired shortly later, without serving either of the two suspensions. *Id.*

Mr. Brett sued his employer. His initial Complaint alleged discrimination and retaliation based on disability, age, and race under Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act. *See generally* Compl., ECF No. 1. Judge Ketanji Brown Jackson determined that it was "nearly impossible to render a determination on the merits" because of the lack of clarity about the claims at issue and the legal standards governing the Postmaster General's response to the Complaint. Memo. Op. & Order, ECF No. 20 at 3. Mr. Brett filed an Amended Complaint, *see* ECF No. 22, and the Postmaster General moved for dismissal of the Amended Complaint or, alternatively, for partial summary judgment, *see* ECF No. 26.[4] Granting her motion in part, the Court dismissed some of Mr. Brett's claims. *Brett v. Brennan* ("*Brett I*"), 299 F. Supp. 3d 63, 74 (D.D.C. 2018).

The Postmaster General now moves for summary judgment on the remaining claims, *see* Mot. for Summ. J. ("Def.'s Br."), ECF No. 53-3, and Mr. Brett opposes, *see* Mem. in Opp. ("Pl.'s Br."), ECF No. 56. Mr. Brett argues that he has "proffered record evidence establishing" both (1) "retaliation for the denial of advanced sick leave, designation of AWOL and imposition of a 14-day suspension," *id.* at 14, and (2) "an impermissibly hostile work environment," *id.* at 24.[5]

---

[4] Mr. Brett later filed a Second Amended Complaint, now the operative one. *See* Second Am. Compl., ECF No. 25.

[5] Mr. Brett potentially abandoned his discrimination—as distinct from his retaliation—claim, discussed in his Second Amended Complaint. *See* SAC ¶ 85–88. But because the Postmaster General understands Mr. Brett still to advance a discrimination claim, the Court will follow suit.

## II. LEGAL STANDARD

To prevail on a motion for summary judgment, one must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this showing has occurred, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is adjudicated, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

# III. ANALYSIS

"The Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). The Act expressly incorporates the liability standards set out in the American Disability Act ("ADA"). *See* 29 U.S.C. § 794(d); 29 C.F.R. § 614.203(b). So to prevail on a claim of discrimination under the Rehabilitation Act, a plaintiff must first establish that he has a "disability" as defined by the ADA. *See Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 546 (D.C. Cir. 2016) (citing 29 U.S.C. §§ 705(9), 705(20)(B)). A person is a disabled individual, a term of art, if he: (1) has "a physical or mental impairment that substantially limits one or more major life activities;" (2) has "a record of such an impairment;" or (3) "is regarded as having such an impairment." *Id.*

In 2008, Congress enacted the ADA Amendments Act of 2008 to ensure "a broad scope of protection" for individuals under the ADA (and thus the Rehabilitation Act). *See* 42 U.S.C. § 12101 note. Congress directed that "[t]he definition of disability . . . shall be construed in favor of broad coverage . . . to the maximum extent permitted by the terms [of the ADA]." 42 U.S.C. § 12102(4)(A).

**A. The Postmaster General is Entitled to Summary Judgment on Mr. Brett's Discrimination Claim.**

The Postmaster General argues that Mr. Brett cannot make out a discrimination claim because he is not "disabled" under the Rehabilitation Act. *See* Def.'s Br. at 7–9. Under a subheading entitled "Plaintiff Is Not Disabled" and over nearly three pages, she insists that Mr. Brett's bicep injury does not substantially limit a major life activity, citing evidence of Mr. Brett operating a snow blower and loading furniture in his truck. *Id.* at 7–8. Mr. Brett's response?

Silence. He does not argue—much less present evidence to show—that there is a genuine dispute about whether he is disabled under the relevant definition. *See generally* Pl.'s Br.

It is well-understood that "if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). The Court finds that Mr. Brett has conceded the argument that he is not disabled.

Of course, a court cannot treat a summary judgment *motion* as conceded simply because the non-moving party fails to file opposition. *Winston & Strawn v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The Court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 509. Under Rule 56, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

But "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Durant v. D.C. Gov't*, 875 F.3d 685, 695 (D.C. Cir. 2017) (affirming district court's grant of summary judgment based on a conceded argument).

So the question is whether the Postmaster General has shown that there is no genuine dispute about whether Mr. Brett is disabled. This she has done. The Circuit has explained that "the burden on a defendant moving for summary judgment may be discharged without factual disproof of the plaintiff's case; the defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in his favor on one or more essential elements of his claim." *Durant*, 875 F.3d at 696 (quoting *Grimes*

6

*v. District of Columbia,* 794 F.3d 83, 93 (D.C. Cir. 2015)). Here, the Postmaster General does not have to prove that Mr. Brett cannot meet any of the three definitions of "disability" under the Rehabilitation Act. She "need not submit 'affidavits or other similar materials negating [her] opponent's claim.'" *Grimes*, 794 F.3d at 93 (cleaned up). Instead, the Postmaster General must point out that Mr. Brett has not come forward with any evidence that he is disabled under the Rehabilitation Act's definition. She did so.

More, the Postmaster General has, in fact, put forward evidence that Mr. Brett is not disabled. In an affidavit, Mr. Brett himself admitted that "routine life activities are not affected" by his bicep injury. *See* Def.'s Ex. 8, ECF No. 53-11 at 3. The EEO Investigative Affidavit asked Mr. Brett:

> Does your medical condition substantially limit your ability to perform a major life activity (I.e., caring for self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working)? If so, please describe the activities that are affected by the medical condition, both work-related and non-work-related, and describe how and to what degree your medical condition affects these activities.

*Id.* His answer: "Routine life activities are not affected except when use of my right arm is involved. I must be very careful not to do anything that might further strain the bicep." *Id.* So Mr. Brett has admitted that he could take care of "routine life activities" so long as it did not involve his right arm. *Id.*

The Postmaster General also submitted evidence that Mr. Brett either exaggerated the extent of his injury or that his condition improved.[6] But this evidence postdates the alleged adverse action, so it is of limited use here.

---

[6] For example, Mr. Brett's Second Amended Complaint admits that Mr. Trent saw Mr. Brett using a snow blower in early 2010—evidence that he could and did use his right arm. SAC ¶ 65. And then in March 2010, Postal Inspection Service Investigators, investigating his workers' compensation claim, observed and videotaped him engaging in activities inconsistent with a

In short, the Court has reviewed the record, assessed the merits of the Postmaster General's argument, and stated its reasons for finding that there was no evidence to defeat her motion for summary judgment. *See Durant*, 875 F.3d at 695. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" at this stage. *Anderson*, 477 U.S. at 252. Mr. Brett has not provided evidence to support his claim that he is disabled or "describe[d] the degree to which [he] is limited with any reasonable specificity." *Thompson v. Rice*, 422 F. Supp. 2d 158, 174 (D.D.C. 2006), *aff'd*, 305 F. App'x 665 (D.C. Cir. 2008). In other words, there is no "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

There is another wrinkle, however, unacknowledged by either party. In employment discrimination cases, when an employer asserts legitimate, nondiscriminatory reasons for its actions, "judicial inquiry into the *prima facie* case is usually misplaced." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). But a plaintiff must still establish certain "threshold" issues, even if they are part of the prima facie case to survive a motion for summary judgment. *See, e.g.*, *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017), *aff'd*, 715 F. App'x 16 (D.C. Cir. 2018) (explaining that a "threshold requirement" of coverage under the Rehabilitation Act is that a person is a "qualified individual with a disability"); *Butler v. Wash. Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 83 (D.D.C. 2017) (holding that a plaintiff's failure to show that he could perform an essential function of his position rendered him not

---

persistent arm injury. *See* Def.'s Ex. 23, ECF No. 53-26 at 1–2. In this video, Mr. Brett reaches over the sides of his pick-up truck and removes various items from the bed of the truck. *Id.* at 2. He was also videoed assisting others, with both arms, load a refrigerator and oven-range into the truck. *Id.* These events were presented to the Court in both the Postmaster General's June 22, 2010 Notice of Proposed Removal, Def.'s Ex. 23, and a copy of the surveillance footage itself, Def.'s Ex. 31, ECF No. 58-3.

"otherwise qualified," and so beyond the protection of the Rehabilitation Act); *Zeigler v. Potter*, 510 F. Supp. 2d 9, 17 (D.D.C. 2007), *aff'd*, No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010) (granting summary judgment to the defendant on a discrimination claim because plaintiff did not qualify as "disabled" under the Rehabilitation Act).

Consider the alternative. A plaintiff could maintain a disability discrimination case without a showing of any kind that he is disabled. Surely this is not the law. The *Brady* court itself noted that whether the plaintiff has established a prima facie case "is *almost* always irrelevant." 520 F.3d at 493 (emphasis added). This is one of those rare times when it is relevant.

For all these reasons, the Court will grant summary judgment to the Postmaster General on Mr. Brett's discrimination claim.

**B. The Postmaster General is Not Entitled to Summary Judgment on the Retaliation Claim.**

The Postmaster General argues that Mr. Brett cannot bring a retaliation claim either because he is not disabled. See Def.'s Br. at 1. But the Circuit teaches "that under Title VII, an employee's retaliation claim does not rise or fall on the success of her underlying, good-faith discrimination claim, and our sister circuits overwhelmingly agree the same is true in the disability rights context." *Nurriddin*, 818 F.3d at 758 n.5 (internal citations omitted). So the Court will not grant summary judgment on this basis.

Mr. Brett contends that the Postmaster General denied his requests for Advanced Sick Leave, designated him AWOL, and issued him a Notice of Suspension all in retaliation for his

9

EEO activities.[7] Pl.'s Br. at 14. The Postmaster General responds that she had legitimate, nonretaliatory reasons for each of these actions. Def.'s Br. at 14–20. Perhaps. But a jury could find otherwise.

Cases asserting unlawful retaliation typically depend on circumstantial evidence of retaliatory motive. Direct evidence of reprisal—such as a statement by a managerial employee that he took an action because an employee had filed a charge of discrimination—is the exception rather than the rule. *See, e.g.*, *Forman v. Small*, 271 F.3d 285, 290, 300 (D.C. Cir. 2001) (noting the recommending official stated that he did not make a promotion recommendation because the plaintiff "had already filed an EEO complaint" over an earlier non-promotion).

Mr. Brett argues that there is direct evidence of a retaliatory motive. Pl.'s Br. at 19. He cites an email from Mr. Trent to Brian Fletcher, a labor relations specialist. The email reads:

> Hey Brian, What's the name of that dance? Turn to the right then then [sic] turn to the left and reach back and throw your DM under that bus. How's that song go the wheels on the bus go around around [sic] where it stops nobody knows. There needs to be a rap song on this one.

Pl.'s Ex. C, ECF No. 56-5 at 95. Mr. Brett argues that Mr. Trent was describing a dance in which he throws Mr. Brett under the bus. Pl.'s Br. at 19.

But the Postmaster General explains that Mr. Trent is describing how district managers "play hot potato" with bad employees because they do not fire them. Def.'s Br. at 8. She explains that "DM" refers to "district manager," and it is the district

---

[7] Mr. Brett's 2009 Notice of Suspension cannot support a claim for retaliation because this occurred before management learned that he had filed an EEO complaint. He does not appear to argue otherwise. *See generally* Pl.'s Br.

10

managers—not any employee or Mr. Brett in particular—that are thrown under the bus by other district managers. *Id.*

At this stage, the Court is careful not to weigh the evidence or make credibility determinations. *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015). Indeed, it assumes all conflicts would be resolved and all inferences drawn in favor of Mr. Brett, the non-moving party. *Id.* Even so, Mr. Brett does not explain how *he* is "your DM" mentioned in this email. At most, this email is circumstantial, not direct, evidence. It is not inconsistent with Mr. Brett's argument that Mr. Trent had a retaliatory motive, but by no means is it direct evidence. *Cf. Valles-Hall v. Ctr. For Nonprofit Advancement*, 481 F. Supp. 2d 118, 141 (D.D.C. 2007) (holding that a "comment is a stray remark that, although probative of discrimination, cannot serve as direct evidence of discrimination").

When a plaintiff offers only circumstantial evidence of retaliation, his claim is governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014). Under that framework, a plaintiff must "first establish a prima facie case of retaliation by showing" that (i) he "engaged in statutorily protected activity," (ii) he "suffered a materially adverse action" by his employer, and (iii) a "causal link connects the two." *Id.* (citing *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce a legitimate, nonretaliatory reason for her action. *Solomon*, 763 F.3d at 14. And if the employer does, the plaintiff must respond with evidence to create a genuine dispute on the ultimate issue of retaliation. *See id.*

Once the employer proffers a nonretaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the "central question" becomes whether

"the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or nonretaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Allen*, 795 F.3d at 39 (cleaned up).

The Postmaster General again argues that denial of Advanced Sick Leave is not an adverse action. *See* Def.'s Br. at 14. The Court still disagrees. *Brett I*, 299 F. Supp. 3d at 73. *See also Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 75 (D.D.C. 2005), *aff'd*, 187 F. App'x 1 (D.C. Cir. 2006) (explaining that "denial of sick leave . . . [is] plainly adverse employment action[]"). In this context, an action is adverse if it would "dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

In any event, the first question is whether the Postmaster General met her evidentiary burden under the second prong of *McDonnell Douglas* to produce a legitimate, nonretaliatory reason for her decision to deny Mr. Brett's requests for sick leave. *See Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019). The Circuit recently outlined four factors that, in most cases, determine whether an employer's evidentiary proffer is adequate: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding);" (2) if the factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason;" (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence;" and (4) the evidence must present a "clear and reasonably specific explanation" so that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Id.*

The Postmaster General argues that she denied Mr. Brett's request for leave because he did not prove that the requested leave was warranted under the U.S. Postal Service's Employee and Labor Relations Manual ("Manual"). Def.'s Br. at 15. When Mr. Brett first requested leave, he gave "cold" and "sore throat" as his reasons. Def.'s Ex. 14 at 1. The next day, Mr. Brett resubmitted his request with doctor's note explaining that he had an upper respiratory infection. *See* Def.'s Ex. 14 at 2; Def.'s Ex. 19. But even with a doctor's note, his supervisors denied the request. According to the Postmaster General, his supervisors did so because he did not submit documentation that he had a "serious disability or illness" as required by the Manual. *See* Def.'s Ex. 17, ECF No. 53-20 at 1.

Applying *Figueroa*'s four factors, the Court finds that the Postmaster General has offered a legitimate, nonretaliatory reason for denying Mr. Brett's requests. First, it has produced evidence that a factfinder could consider at trial: the form denying his requests that cite "513" and "511," the part of the Manual that explains the requirements for this type of leave. *Figueroa*, 923 F.3d at 1087. Second, if a factfinder believed that "513" and "511" referenced the Manual and the parameters for Advanced Sick Leave, it could reasonably find that Mr. Brett's request was denied for a nonretaliatory reason. *Id.*

Third, the Postmaster General's explanation is legitimate. *Id.* Her proffered reason is facially credible given this record. *See Bishopp v. District of Columbia*, 788 F.2d 781, 788 (D.C. Cir. 1986). Mr. Brett does not argue, for example, that his upper respiratory infection was a "serious disability or illness," given that he returned to work two days later. *See* Pl.'s Br. at 10. And "[f]ailure to comply with an employer's attendance policy constitutes a nonretaliatory and nondiscriminatory ground for an adverse employment decision." *Nurriddin v. Bolden*, 40 F. Supp. 3d 104, 132 (D.D.C), *aff'd*, 818 F.3d 751 (D.C. Cir. 2014). Finally, the Postmaster

13

General produced a "clear and reasonably specific explanation." *Figueroa*, 923 F.3d at 1088. Mr. Brett had a "full and fair opportunity" to attack her explanation as pretextual. *Id.* Indeed, as discussed below, Mr. Brett has done so successfully.

In sum, the Postmaster General has proffered admissible evidence showing a legitimate, nonretaliatory, clear, and reasonably specific explanation for her actions. So the Court turns to *McDonnell Douglas'* third prong, which considers whether Mr. Brett produced enough evidence for a reasonable jury to find that his employer's proffered justification was pretextual.

Mr. Brett suggests that the Postmaster General changed her reason for denying his requests. Pl.'s Br. at 20. "[S]hifting and inconsistent justifications are 'probative of pretext.'" *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (cleaned up). He argues that his request was first denied because he did not submit medical documentation, but after he got a doctor's note the next day, his request was denied because he was not seriously ill. Pl.'s Br. at 20–21. The Manual requires "medical documentation" of a "serious disability or illness." *Id.* Requiring both medical documentation *and* requiring that documentation to show "a serious disability or illness" is reasonable. In both instances, his requests were denied because he did not satisfy the requirements for Advanced Sick Leave, outlined in the Manual. *See* Def.'s Ex. 17 at 1.

The Postmaster General argues that Mr. Trent approved Mr. Brett's requests for leave when they were warranted. Def.'s Br. at 15. Back in September 2009, Mr. Trent approved a different request for Advanced Sick Leave from Mr. Brett. Def.'s Ex. 18, ECF No. 53-21. On that slip, however, Mr. Trent wrote that he had approved it "by mistake," but he would "make the mistake good and approve the 104 hours." *Id.*

The Postmaster General insists that this is evidence that Mr. Trent did not deny the January request as retaliation. Def.'s Br. at 15. This evidence, according the Postmaster

14

General, shows that Mr. Trent was willing to approve Mr. Brett's requests when they were warranted. *See id.* But Mr. Brett insists that this prior approval means nothing since Mr. Trent did it by mistake. Pl.'s Br. at 21.

The Court agrees with Mr. Brett. The September 2009 approval says little about Mr. Trent's willingness to grant warranted leave because he claims he meant to deny it. A reasonable jury could infer that Mr. Trent meant to deny all requests by Mr. Brett, but one time he made a mistake. Or it could infer that Mr. Trent was a reasonable manager, keeping his word to Mr. Brett. That is a decision for the jury.

Another issue is timing. "Temporal proximity can indeed support an inference of causation, but only where the two events are very close in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). Mr. Trent learned about Mr. Brett's EEO activities less than three months before this incident. *See* Pl.'s Ex. A at 120. More, he was preparing his affidavit in response to his EEO complaint *the same week* Mr. Brett's requests for leave was denied. *See* Def.'s Ex. 15, ECF No. 53-18.[8] To be sure, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine." *Woodruff*, 482 F.3d at 530. But this is at the least some evidence that a reasonable factfinder may find probative of pretext.

Mr. Brett also emphasizes that neither Mr. Trent nor Mr. Bowser told him that he could take Annual Leave even though he could not take Advanced Sick Leave. Pl.'s Br. at 21. As the

---

[8] The Postmaster General insists that the Court should measure temporal proximity from when Mr. Trent learned about Mr. Brett's protected activity. While that may be true in evaluating Mr. Brett's prima facie case, the fact that Mr. Trent was preparing for the EEO investigation when Mr. Brett's requests were denied is still probative of pretext. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (explaining that at the summary judgment stage, a court evaluates whether "a reasonable jury could infer retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers" (cleaned up)).

Postmaster General points out, Mr. Brett identifies no authority for the claim that these managers *had to* make this recommendation to him. Def.'s Reply, ECF No. 58-1 at 13. But a jury could reasonably infer that they did not remind him about this option because they were unhappy that he had filed an EEO complaint against them. The Postmaster General does not explain why they did not. In fact, another time, back in June 2009, when Mr. Brett did not come into work even after a request for Advanced Sick Leave was denied, his employer did not cite him as AWOL and instead took time from his Annual Leave. *See* Pl.'s Ex. A at 82–83; Pl.'s Ex. B, ECF No. 56-4 at 218–19. The Postmaster General has yet to explain why this incident was different.

"Usually, proffering 'evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury.'" *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005) (cleaned up). Mr. Brett has produced evidence by which a reasonable jury could conclude that the Postmaster General's stated reason was pretextual. Although a jury may ultimately decide to credit her explanation, "at the summary judgment stage, a judge may not make credibility determinations, weigh the evidence, or draw inferences from the facts—these are jury functions, not those of a judge ruling on a motion for summary judgment." *Id.*

Consider a similar case. In *Byrd v. Vilsack*, an employee-plaintiff was designated AWOL and docked about seven hours of pay for her absence after the employer denied her request to telework. 931 F. Supp. 2d 27, 41 (D.D.C. 2013). The court considered "these issues" together in assessing whether she had suffered an adverse action, explaining that "those actions did not take place in a vacuum," and it was undisputed that the later actions "flowed directly" from the employer's initial decision. *Id.* So too here. Mr. Brett's AWOL status and then the Notice of

16

Suspension "flowed directly" from the Postmaster General's decision to deny his requests for leave.

While the Postmaster General has asserted legitimate, nonretaliatory reasons for each of these adverse actions, pretext is still in genuine dispute given the chain of events. If the Postmaster General had granted Mr. Brett's request for leave, he would not have been charged as AWOL or issued a Notice of Suspension. If a jury believes his supervisor denied his requests for leave as retaliation, as it may reasonably do, it may also infer from the same evidence that management designated him as AWOL and issued him this Notice of Suspension for the same reason.

For all reasons, the Court will deny the Postmaster General's motion as to Mr. Brett's retaliation claim.

**C. The Postmaster General is Entitled to Summary Judgment on the Work Environment Claim.**

Finally, according to Mr. Brett, he was also subjected to a hostile work environment. Pl.'s Br. at 24. To support this claim, he cites both suspensions, the denial of his requests for advanced sick leave, his AWOL status, and Mr. Trent's complaint "that exposed him to potential criminal liability." *See id*. at 25. This claim generally tries to cast the series of allegedly retaliatory acts discussed above as an oppressive work atmosphere permeated by unlawful animus.

To prevail on a hostile-work-environment claim under the Rehabilitation Act, a plaintiff must establish that he faced "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013)

(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). In evaluating a hostile-work-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

"Discrete acts constituting . . . retaliation claims, therefore, are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). So, "as a general matter," courts "frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008). In fact, some courts have said that a plaintiff cannot "rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile work environment claim." *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 56–57 (D.D.C. 2011). A plaintiff "cannot simply regurgitate . . . retaliatory discipline claims in an effort to flesh out [his] hostile work environment claim." *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 210 (D.D.C. 2007), *aff'd*, 296 Fed. App'x. 77 (D.C. Cir. 2008). But that is what Mr. Brett has done here.

Even assuming Mr. Brett can re-purpose the allegedly retaliatory actions as the basis for his hostile-work-environment claim, he is still complaining about personnel decisions, and these decisions, even in his own telling, involve no intimidation, ridicule, or insult. *See Baloch*, 517 F. Supp. 2d at 364–65 (considering whether a "personnel measure" involved any "intimidation, ridicule or insult"). For example, he does not allege—much less show—that any of the alleged mistreatment happened publicly. *Id.* (treating the public nature of the humiliation as a factor in assessing the hostility of a work environment claim). And Mr. Brett does not contend that he

18

was in any way physically threatened during any of the alleged incidents. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88 (1998) (directing courts to consider whether a work environment is "physically threatening or humiliating" when assessing a hostile-work-environment claim).

For his hostile-work-environment claim, he can rely on the 2009 14-Day Suspension that predates his EEO activity. Even so, the Postmaster General's decision to suspend him based on a workplace accident does not transform a lawful work atmosphere into an impermissibly hostile one. *Cf. Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (explaining that "[a]lthough the work environment described . . . was hardly ideal, . . . no reasonable jury could find it 'abusive' under the standard set forth" by the Supreme Court).

The same goes for Mr. Trent's decision to refer him to the Inspector General based on his workers' compensation claim. Indeed, the evidence strongly suggests that Mr. Trent had well-founded concerns that Mr. Brett may have been malingering. *See* Def.'s Ex. 23; Def.'s Ex. 31. This personnel decision does not come close to creating a work environment that "is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011); *compare Singletary v. District of Columbia,* 351 F.3d 519, 528–29 (D.C. Cir. 2003) (declining to grant summary judgment against an employee claiming hostile work environment where, for over a year and a half, the employee was forced to work in a poorly lit, unheated, and unventilated storage room full of brooms and boxes of debris).

In the end, taking all incidents together, Mr. Brett has not met his burden of establishing a hostile work environment.[9] *See Baloch*, 550 F.3d at 1195, 1201 (affirming summary judgment to employer where plaintiff alleged several letters of reprimand, leave restrictions, two suspensions, poor performance reviews, and a verbal altercation where a supervisor threatened to have the plaintiff "arrested, led out of the building in handcuffs, and jailed"); *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) (finding no hostile work environment where plaintiff was suspended, moved to a worse workspace, reprimanded, yelled at); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 106 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007) (finding no hostile work environment where plaintiff experienced lowered performance evaluations, removal of important assignments, and close scrutiny of assignments by management). So the Court will grant summary judgment to the Postmaster General on this claim.

### IV. CONCLUSION

For the reasons explained above, the Court will grant the Postmaster General's motion for summary judgment as to Mr. Brett's discrimination and hostile-work-environment claims, but it will deny her motion as to his retaliation claim.

A separate order will issue.

Dated: August 27, 2019                                             TREVOR N. McFADDEN, U.S.D.J.

---

[9] Mr. Brett also claims that he has "proffered facts that these actions did not happen to colleagues that had not lodged complaints against Al Trent either by an EEO complaint or otherwise protected whistleblowing activity." Pl.'s Br. at 25. But this conclusory statement comes with no citation to the record of any kind.

20